1   QUINN EMANUEL URQUHART & SULLIVAN, LLP
2     Michael T. Zeller (Bar No. 196417)
      michaelzeller@quinnemanuel.com
      Adam B. Wolfson (Bar No. 262125)
3     adamwolfson@quinnemanuel.com
    865 South Figueroa Street, 10th Floor
4   Los Angeles, California 90017-2543
    Telephone:   (213) 443-3000
5   Facsimile:   (213) 443-3100

6   Attorneys for Plaintiffs

7

8                  UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10                          CV11  03807 DSF (JCx)

11  ALKI DAVID, DETRON BENDROSS,        CASE NO.
    JEROME WOODS (P/K/A ROME),
12  TRISCO SMITH-PEARSON,               COMPLAINT FOR:
    JEFFREY THOMPKINS (P/K/A JT
13  MONEY), JONATHAN                    (1) INDUCEMENT OF COPYRIGHT
    SHINHOSTER (P/K/A J-SHIN),          INFRINGEMENT;
14  SPECTACULAR SMITH, DIAMOND
    SMITH (P/K/A BABY BLUE),            (2) CONTRIBUTORY COPYRIGHT
15  COREY MATHIS (P/K/A SLICK           INFRINGEMENT; and
    'EM), EMMANUEL RAMONE
16  DeANDA, ERIC JACKSON (P/K/A         (3) VICARIOUS COPYRIGHT
    KAINE), DE'ANGELO HOLMES            INFRINGEMENT
17  (P/K/A D-ROC), ANTHONY ROUND
    (P/K/A N.A.R.D.), DENNIS ROUND,     JURY TRIAL DEMANDED
18  and COREY JOHNSON (P/K/A
    COLDHARD),
19
                Plaintiffs,
20
          vs.
21
    CBS INTERACTIVE INC., CNET
22  NETWORKS, INC., LIME WIRE LLC,
    and LIME GROUP LLC,
23
                Defendants.
24

25

26

27

28

                                                    COMPLAINT

1    Plaintiffs, for their Complaint against Defendants CBS Interactive Inc. ("CBS
2   Interactive") and CNET Networks, Inc. ("CNET," collectively with CBS
3   Interactive, the "CBS Defendants"), Lime Wire LLC ("LW"), and Lime Group LLC
4   ("Lime Group," collectively with LW, the "LimeWire Defendants"), allege as
5   follows:

6                          **SUMMARY OF THE ACTION**

7          1.     This action arises from Defendants' direct contribution to and
8   participation in massive copyright infringement of Plaintiffs' works on peer-to-peer
9   ("P2P") systems. LimeWire is the most notorious of these systems in recent years.
10  LimeWire and its principals were found liable for copyright infringement on a
11  virtually unprecedented scale in 2010 and enjoined from further infringing activities
12  by a federal Court.

13         2.     The CBS Defendants have been the main distributor of LimeWire
14  software and have promoted this and other P2P systems in order to directly profit
15  from wide-scale copyright infringement. Internet users have downloaded more then
16  *220 million* copies of LimeWire software from the CBS Defendants' website, found
17  at Download.com, since 2008. This consisted 95 percent or more of all copies of
18  LimeWire that were downloaded until LimeWire was shut down by Court Order.
19  Download.com also was a major source for other P2P software applications,
20  including Morpheus (174 million downloads), iMesh (115 million downloads), and
21  FrostWire (32 million downloads). The CBS Defendants received massive amounts
22  of revenue from P2P providers on a "pay per download" basis and also from
23  advertising revenues generated by advertisements placed on the download screen for
24  P2P software. The CBS Defendants' business model has been so dependent upon
25  P2P and file sharing applications that entire pages of Download.com are designed
26  specifically to list and categorize these software offerings. In fact, the CBS
27  Defendants were well aware that these software applications were used

28

1  overwhelming to infringe when they first partnered with LimeWire and other P2P
2  providers, but ignored it in exchange for a steady stream of income.

3      3.    The CBS Defendants have not just distributed and profited from
4  software applications used to infringe copyrights on a massive scale.  They also
5  furnished articles and other content that explained how users could use P2P software
6  to infringe.  On cnet.com, Download.com, and other websites, the CBS Defendants
7  offered videos, articles and other media that instructed how to use P2P software to
8  locate pirated copies of copyrighted works and remove electronic protections placed
9  on digital music files in order to prevent infringement.

10     4.    Plaintiffs are artists who work in the fields of music and film.  They
11 wrote, produced, distributed, sold and/or licensed songs, movies and other
12 copyrighted works that have been infringed by Defendants, including without
13 limitation through Defendants' distribution and promotion of P2P software that has
14 been used to copy and distribute Plaintiffs' works.  Defendants must compensate
15 Plaintiffs for the damages they caused and be ordered to cease future infringement.

16                          **JURISDICTION AND VENUE**

17     5.    The Court has subject matter jurisdiction over the claims asserted
18 herein pursuant to 28 U.S.C. §§ 1331 and 1338(a).

19     6.    The Court has personal jurisdiction over Defendants because each
20 resides and/or may be found in California, does systematic and continuous business
21 in California, and has performed acts directed at and causing harm in California
22 which give rise to this Complaint.

23     7.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), (c) and
24 28 U.S.C. § 1400(a).

25                                  **PARTIES**

26     8.    Plaintiffs are the legal and beneficial owners of copyrighted works that
27 have been infringed by Defendants.

28

-3-

COMPLAINT

9.     Plaintiff Alki David is a citizen of the United Kingdom and resident of the State of California.

10.     Plaintiff Detron Bendross is a member of the rap group 2 Live Crew and a citizen and resident of the State of Florida.

11.     Plaintiff Jerome Woods, professionally known as "ROME," is a citizen and resident of the State of California.

12.     Plaintiff Trisco Smith-Pearson is a member of the R&B group The Force MDs and a citizen and resident of the State of New York.

13.     Plaintiff Jeffrey Thompkins, professionally known as "JT Money," is a citizen and resident of the State of Florida.

14.     Plaintiff Jonathan Shinhoster, professionally known as "J-Shin," is a citizen and resident of the State of Florida.

15.     Plaintiff Spectacular Smith is a member of the R&B group Pretty Ricky and a citizen and resident of the State of Florida.

16.     Plaintiff Diamond Smith, professionally known as "Baby Blue," is a member of the R&B group Pretty Ricky and a citizen and resident of the State of Florida.

17.     Plaintiff Corey Mathis, professionally known as "Slick 'Em," is a member of the R&B group Pretty Ricky and a citizen and resident of the State of Florida.

18.     Plaintiff Emmanuel Ramone DeAnda is a member of the R&B group Pretty Ricky and a citizen and resident of the State of Florida.

19.     Plaintiff Eric Jackson, professionally known as "Kaine," is a member of the hip hop group Ying Yang Twins and a citizen and resident of the State of Georgia.

20.     Plaintiff De'Angelo Holmes, professionally known as "D-Roc," is a member of the hip hop group Ying Yang Twins and a citizen and resident of the State of Georgia.

-4-

21.   Plaintiff Anthony Round, professionally known as "N.A.R.D.," is a member of the hip hop group Do Or Die and a citizen and resident of the State of Illinois.

22.   Plaintiff Dennis Round is a member of the hip hop group Do Or Die and a citizen and resident of the State of Illinois.

23.   Plaintiff Corey Johnson, professionally known as "Coldhard," is a member of the hip hop group Crucial Conflict and a citizen and resident of the State of Illinois.

24.   Defendant CBS Interactive, Inc. is a Delaware corporation with its principal place of business at 235 Second Street, San Francisco, California 94105.

25.   Defendant CNET Networks, Inc. is a Delaware corporation and a fully-owned subsidiary of CBS Interactive.  CNET's principal place of business is 235 Second Street, San Francisco, California 94105.

26.   Defendant Lime Group LLC is a Delaware limited liability company with its principal place of business at 377 Broadway, 11th Floor, New York, New York 10013.

27.   Defendant Lime Wire LLC is a Delaware limited liability company with its principal place of business at 377 Broadway, 11th Floor, New York, New York, 10013, and is a wholly-owned subsidiary of Defendant Lime Group LLC, with which it shares offices and officers/employees.  Lime Wire LLC and Lime Group LLC directly and indirectly designed LimeWire and updated, improved, promoted, distributed and marketed LimeWire.

28.   Each Defendant acted in concert with each other and as the principal, agent, or joint venture of, or for, other Defendants with respect to the acts, violations, and common course of copyright infringement alleged by Plaintiffs.

## FACTS

## P2P File Sharing Systems, Including LimeWire

29.   P2P file sharing networks are systems which allow users to connect to one another and transfer files located on each other's hard drives.  In order to participate in these networks, each user must download and install on the user's computer a software program—commonly known as a "client"—that facilitates the file transfers.  Examples of P2P clients include Napster, Aimster, KaZaA, Grokster and LimeWire.

30.   P2P clients provide an interface for users to search and obtain copies of files located on their respective file sharing networks.  Depending on which P2P client is employed, users can filter results by type of file (*e.g.*, audio or video), file name, artist and other identifying information.  Many P2P clients, including those found liable in some of the most infamous copyright infringement cases of the past decade, are (or were) specifically designed to locate music files by name of the song or artist and are (or were) targeted at audiences well-known for their desire to infringe copyrights.

31.   File sharing networks depend on users to actually "share" their files.  P2P clients are specifically designed to facilitate this process.  In most cases, the client automatically searches a user's computer for "shareable" files, typically audio and video files.  Clients also often penalize users with slower download speeds or other decreased functionality if they do not share "enough" files with other users on the network.  The purpose of this functionality is clear: users must share files if they wish to enjoy the full benefits of the P2P network, and the client will make all files available for sharing unless the user specifically opts out of this option.

32.   As Napster's one-time success proved, there is a large demographic of internet users who seek to obtain free copies of their favorite music regardless of copyrights.  The sheer size of this group demonstrated that P2P clients could generate massive revenues if they designed a user experience that expressly catered

-6-

1  to copyright infringement, thereby drawing users to their advertisements and pay
2  services.  When Napster was shut down due to court-ordered injunction, numerous
3  P2P clients stepped in to fill the void.  These P2P clients, including but not limited
4  to Aimster, Grokster, KaZaA, Morpheus and LimeWire, actively marketed
5  themselves to Napster's former customers.

6       33.  To use just the most recent P2P client found liable for copyright
7  infringement, the LimeWire Defendants began providing their P2P network in or
8  around August 2000.  In order to attract users to their service, the LimeWire
9  Defendants advertised on other P2P networks and made statements comparing
10 LimeWire's user experience to other file sharing clients.  Above and beyond mere
11 advertisements, the LimeWire Defendants specifically designed their client to be
12 highly efficient at finding and downloading copies of copyrighted sound recordings.

13     34.  There were two forms of the LimeWire software (updated in several
14 versions over the years).  The first was "LimeWire Basic," a free version of the P2P
15 client.  The second was "LimeWire PRO," which sold for approximately $19 and
16 ostensibly offered purchasers faster downloads.  Both forms of LimeWire were
17 compatible with each other, and users could share files with each other no matter
18 with form of LimeWire they possessed.

19     35.  When a user first installed LimeWire, the program automatically
20 searched their hard drive for media files and made them available for other users to
21 download via the P2P network.  In order to ensure that the maximum number of
22 files were "shareable" at any given time, LimeWire was designed to automatically
23 open when a user started their computer.  This meant that turning on one's computer
24 automatically logged the user into the P2P network and made the selection of files
25 across that network as vast as possible.

26     36.  Another method that the LimeWire Defendants employed to ensure the
27 maximum amount of available files—thereby increasing LimeWire's reputation as a
28 desirable copyright infringement tool—was to maximize the number of available

-7-

1  shared files by automatically saving them in a "shared" folder on the user's hard

2  drive. If a user turned off this feature or opted to have their files saved in a non-

3  shared folder, they were labeled a "freeloader" by the LimeWire software and ran

4  the risk of being refused future downloads by other users who could choose to block

5  sharing with freeloaders.   The LimeWire Defendants actively discouraged

6  freeloaders on their website, stating, for example, "If you're not sharing enough

7  files, users with certain connection preferences won't let you connect to them for

8  downloading. For this reason, we recommend all LimeWire users share generously

9  with one another." In other words, share files or you will not be able to infringe as

10 easily.

11     37.   The LimeWire Defendants also designed LimeWire's interface to

12 maximize users' ability to quickly locate and obtain copies of copyrighted materials.

13 Users could search by music genre, song name, artist name or album name. When

14 searches yielded multiple sources for the same copyrighted materials, LimeWire

15 displayed the connection speed of each source (*i.e.*, how fast that user's internet

16 connection was) so that the searching user could choose the fastest download option.

17 Using these features in combination, LimeWire users were able to locate and

18 download copyrighted sound recordings in the shortest amount of time possible.

19     38.   On May 25, 2010, United States District Judge Kimba Wood found

20 LimeWire liable for massive copyright infringement. Later that same year, Judge

21 Wood permanently enjoined LimeWire from all further infringement activities. In

22 doing so, the Court found that, among other things:

23     •     LimeWire "intentionally encouraged direct infringement" by its users;

24     •     the LimeWire software application was used "overwhelmingly for

25 infringement" and allowed for infringement on a "massive scale";

26     •     LimeWire and its principals knew about "the substantial infringement

27 being committed" by LimeWire users;

28

1   • LimeWire marketed itself to Napster users, who were known copyright

2   infringers, and promoted LimeWire's infringing capabilities to those users;

3   • LimeWire employed a business model that depended on mass

4   infringement, relying on "massive user population generated by" the

5   LimeWire software's "infringement-enabling features"; and

6   • LimeWire "actively assisted infringing users" in their infringement

7   efforts and tested the LimeWire client software by searching for copyrighted

8   material.

9   39.   Of the many P2P clients that remain in existence, most include features

10  nearly identical or identical to those found in LimeWire. FrostWire, as just one

11  example, is an open source P2P client developed from the LimeWire developmental

12  source code by a group of "concerned [members] of LimeWire's open source

13  community" who first sought to "protect" the LimeWire code in 2005, after the

14  Supreme Court's *Grokster* opinion. The CBS Defendants call FrostWire a "fork of

15  the LimeWire source code" that is "practically indistinguishable" from LimeWire.

16  Commenters on the CBS Defendants' website, Download.com, further describe

17  FrostWire as "Like An Updated Version Of LimeWire," a "Great program to

18  replace LimeWire," and "just as good as LimeWire, maybe better."

19  **The CBS Defendants' Participation In And Profiteering From Infringement**

20  40.   Download.com, found at http://download.cnet.com, is one of the CBS

21  Defendants' stable of websites.   As the name implies, Download.com offers

22  programs and applications for download.  In addition to this service, the site also

23  provides reviews written by CNET editors, allows program-specific comments from

24  users, and is organized in such a way as to maximize a user's ability to find and

25  obtain copies of the program or application they desire.

26  41.   Software publishers must be approved to have their software listed on

27  Download.com.  In order to do so, they first go through an application process on

28  Upload.com, found at https://upload.cnet.com.  On this site, the CBS Defendants

-9-

1  advertise that software publishers should "[p]romote your software on the *largest*
2  *distribution network in the world*." As they further state, "Upload.com is the central
3  destination to submit and promote your software on CNET Download.com and other
4  sites in our growing distribution network."

5       42.   After a software publisher creates a developer account, which requires
6  Download.com staff approval, they may submit their program for review. In this
7  application, the publisher categorizes the program and fills out a detailed
8  explanation of its features and purpose. After reviewing this application,
9  Download.com's staff decides whether to permit the program on Download.com and
10  where to place it on the website.

11       43.   As developers release new versions of their software, they must also
12  update their application to Download.com. Included in this update are explanations
13  of new features, new functionality, improvements in user interface and experience,
14  and any other difference between the new and previous version. As with the initial
15  application, the Download.com staff reviews and decides whether to allow the
16  listing.

17       44.   At each step in the initial application and subsequent update process,
18  Download.com possessed the ability to refuse to list the publisher's software,
19  thereby conferring upon Download.com the ability to supervise and control any
20  infringing activity taking place on its website. If Download.com staff did not
21  believe the software should be accepted, they could either outright refuse to list it or
22  suggest changes to the program itself. At no point was Download.com obligated to
23  list programs submitted for approval to Upload.com. Further, Download.com was
24  within its full rights to *remove* listings at its discretion.

25       45.   The CBS Defendants generate revenue from Download.com in several
26  ways. First, software publishers have the option to pay for a "Basic" and
27  "Premium" account on Upload.com. Although there is also a "Free" account, the
28  former two types of account offer increased benefits for a monthly subscription fee.

1   Second, companies may advertise directly with Download.com and seek to place
2   their ads on popular download listings.  Third, the CBS Defendants advertise their
3   other websites on Download.com, driving traffic and revenue to those sites.  Fourth,
4   the CBS Defendants offer a program called Pay-Per-Download ("PPD"), which they
5   push heavily on Upload.com and which offers several unique options.

6       46.    PPD is described as a "performance-based program that allows you to
7   increase downloads by up to 150 percent, while maintaining control of your costs."
8   Participants in the program obtain a "top-five 'sponsored' listing" for their product
9   in their respective Download.com category, out-of-category promotional rotation on
10  Download.com pages, including on "post-download pages and other placements in
11  [Defendants'] network," and 10 additional keywords to enable Download.com users
12  to find the publisher's program.  Participants also have the option to pay only for
13  initiated downloads from unique users and the ability to choose "the bid amount and
14  monthly spending cap for your campaign."

15      47.    PPD is designed to offer adaptable advertising options for software
16  publishers and generate strong cash flow for the CBS Defendants.  On information
17  and belief, several P2P client publishers, including the LimeWire Defendants, used
18  and use the PPD program and generated substantial revenues for the CBS
19  Defendants.  In addition, due to P2P clients' popularity, publishers of other types of
20  software advertised heavily on P2P download screens, thus generating additional
21  revenue streams for the CBS Defendants due to P2P client listings on
22  Download.com.

23      48.    Download.com hosted copies of LimeWire for download on its servers.
24  It also has variously hosted other such notorious infringers as Napster, Morpheus,
25  KaZaA, BearShare, and iMesh.  Today, even after the United States District Court's
26  recent infringement findings and permanent injunction against LimeWire,
27  Download.com *still* hosts download links for several P2P clients.  Upon information
28  and belief, the CBS Defendants have generated and continue to continue to generate

1   substantial fees from the P2P client publishers themselves and advertisers who wish
2   to have their programs listed on P2P client download screens.  The CBS Defendants
3   also generate revenues by cross-promoting their websites on P2P client download
4   screens.

5       49.   Because the CBS Defendants own the "largest [download] distribution
6   network in the world," they were particularly valuable partners in the dissemination
7   and popularity of various P2P client infringers.  LimeWire, which was one of
8   Download.com's top downloaded programs, owed its success to the distribution it
9   received through Download.com.  Upon information and belief, approximately 95
10  percent of LimeWire downloads occurred via Download.com.  In fact, LimeWire's
11  own website redirected users to Download.com when they attempted to download
12  the client.  Other infamous P2P client publishers included similar redirects from
13  their home websites for downloads of their programs.

14      50.   The CBS Defendants also worked with LimeWire and other P2P
15  publishers to provide software that maximized infringement.  For each version of
16  LimeWire, for example, Download.com staff corresponded with the LimeWire
17  Defendants' representatives regarding the features in the client program.  These
18  features demonstrated that LimeWire was explicitly designed for copyright
19  infringement.  For example, LimeWire (a) included search capabilities that focused
20  on music title, artist, music genre, and other identifying factors of copyrighted sound
21  recordings; (b) provided a "preview" function for the audio player so users could
22  confirm that audio files they wished to download were the actual files they were
23  searching for; (c) punished users who did not share enough files; and (d) in later
24  versions, included a copyright filter but set the default upon installation to "off."
25  Nevertheless, Download.com did not refuse to list LimeWire on its site and did not
26  require that the LimeWire Defendants include filters or other protections against
27  copyright infringement.  Other P2P clients underwent a similarly-streamlined
28  approval process for their infringement software.

-12-

1    51.   Although the CBS Defendants' distribution was critical to the
2  infringing P2P systems' success, that was not the extent of their involvement.
3  Defendants also actively promoted the P2P clients on Download.com and explained
4  how users could infringe copyrights to the greatest degree possible.

5    52.   One way that the CBS Defendants promoted copyright infringing P2Ps
6  was to write "reviews" of the program and apply a rating on a five star scale. These
7  reviews discussed the program's functionality, features, strengths, and weaknesses.
8  In many instances, they also discussed the purpose of the program. The LimeWire
9  Defendants similarly posted self-serving explanations of LimeWire on
10  Download.com in order to promote the product

11    53.   For example, the CBS Defendants posted a "CNET Editors' Review"
12  on LimeWire on February 12, 2009. CNET editor Seth Rosenblatt noted from the
13  start that LimeWire was a "post-Napster clone" that had evolved into a "leading role
14  as the quintessential Gnutella [protocol] client." He also noted that "LimeWire is
15  the highest-profile P2P application." At the time the CBS Defendants posted this
16  review, they knew that LimeWire was embroiled in a lawsuit accusing it of massive
17  copyright infringement, and that several other P2P clients had already been shut
18  down for their own infringement. Nevertheless, the CBS Defendants did not issue a
19  warning that users should refrain from using LimeWire to infringe copyrights.
20  Instead, they pointed out that it was a useful Napster replacement and gave it four-
21  and-a-half stars out of five.

22    54.   As part of their review process, the CBS Defendants tested the software
23  that they reviewed and, in the case of P2P clients, *infringed copyrights to do so*. In a
24  video that Download.com posted to its website, the CBS Defendants again reviewed
25  LimeWire, but this time demonstrated how it worked to Download.com users. As
26  the viewer looks at the screen demonstrating a sample search, they see a list of
27  copyrighted works, including those from several well-known musical artists. In this
28  same video, Defendants admit that they downloaded files generated by these

-13-

1   searches to test the speeds LimeWire could deliver for users.  The message of the
2   video is clear: LimeWire is really great at infringing copyrights.

3        55.    Download.com staff also acknowledged in public interviews that they
4   knew P2P clients hosted on their site were intended for copyright infringement.  In
5   an interview discussing LimeWire, for example, Mr. Rosenblatt, the editor who
6   wrote the previously-mentioned LimeWire review, noted that file sharing is
7   primarily used for copyright infringement.

8        56.    To this day, Download.com still hosts and promotes P2P clients that
9   have been specifically designed for copyright infringement.  For example, as noted
10  previously, the CBS Defendants continue to provide a download for FrostWire, the
11  open source version of LimeWire that is "practically indistinguishable" from its
12  infringing cousin.  As Download.com's users point out on the website, "Frostwire is
13  basically Limewire replaced! ... I'm glad that this is a lot like Limewire because
14  then I don't have to learn anything new."  Although the CBS Defendants now
15  include a belated, stock warning against copyright infringement on their website,
16  this does not stop them from continuing their support of known infringers.

17       57.    Plaintiffs' copyrighted works were and are available on P2P file
18  sharing networks developed, distributed, and promoted by Defendants.  Defendants
19  accordingly are liable for copyright infringement.

**COUNT 1**

**INDUCEMENT OF COPYRIGHT INFRINGEMENT**

22       58.    Plaintiffs incorporate as if set forth herein the allegations made in
23  Paragraphs 1 through 57.

24       59.    Individuals using P2P client software that Defendants created,
25  distributed and promoted, including LimeWire and others, have directly infringed
26  and are directly infringing Plaintiffs' copyrights by, for example, creating
27  unauthorized reproductions of Plaintiffs' copyrighted works and distributing copies

28

1    of such works to the public in violation of Plaintiffs' exclusive rights under the

2    Copyright Act, 17 U.S.C. §§ 106, 501.

3        60.    Defendants are liable for inducing the copyright infringement of

4    Download.com users. The CBS Defendants distribute and promote several P2P

5    clients, including but not limited to the LimeWire client and current offerings such

6    as FrostWire and iMesh. In distributing and promoting these P2P clients, the CBS

7    Defendants inform and informed their users that the clients were optimized for the

8    unauthorized copying and transmission of copyrighted sound recordings, thereby

9    actively facilitating, encouraging and enticing Download.com users to engage in the

10    infringement.

11        61.    Defendants have induced and continue to induce infringement by, for

12    example, aiming to satisfy a known source of demand for copyright infringement,

13    including the market comprising users of other infringing services that were shut

14    down or compelled to block access to Plaintiffs copyrighted works, such as Napster,

15    Morpheus, Grokster, KaZaA, and now LimeWire.

16        62.    Defendants further have induced and continue to induce infringement

17    by, for example, continuing to provide downloads for P2P that clients that fail to

18    block or diminish access to infringing material even though there are technological

19    means to do so – means that are known to Defendants and the P2P client publishers,

20    and some of which have been employed by P2P clients who operate legally.

21        63.    Defendants further have induced and continue to induce infringement

22    by, for example, building and maintaining a business model to profit directly from

23    the demand for infringing P2P clients.

24        64.    Defendants' infringement is and has been willful, intentional,

25    purposeful, and in disregard of the rights of Plaintiffs, and has caused substantial

26    damage to Plaintiffs.

27        65.    As a direct and proximate result of Defendants' infringement, Plaintiffs

28    are entitled to damages and their costs, including reasonable attorneys' fees,

1   pursuant to 17 U.S.C. § 505.  Defendants' conduct has caused, and unless enjoined
2   by the Court, will continue to cause Plaintiffs great and irreparable injury that
3   cannot be fully compensated or measured in money.  Plaintiffs have no adequate
4   remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiffs therefore also are entitled to
5   injunctive relief to prohibit further infringement of Plaintiffs' copyrights.

### COUNT 2

### CONTRIBUTORY COPYRIGHT INFRINGEMENT

8   66.   Plaintiffs incorporate as if set forth herein the allegations made in
9   Paragraphs 1 through 65.

10   67.   Individuals using P2P client software that Defendants created,
11   distributed and promoted, including LimeWire and others, have directly infringed
12   and are directly infringing Plaintiffs' copyrights by, for example, creating
13   unauthorized reproductions of Plaintiffs' copyrighted works and distributing copies
14   of such works to the public in violation of Plaintiffs' exclusive rights under the
15   Copyright Act, 17 U.S.C. §§ 106, 501.

16   68.   Defendants are liable as contributory infringers for the copyright
17   infringement committed via P2P client software that Defendants distributed,
18   including LimeWire and others.   Defendants have knowledge of the massive
19   infringement that has occurred and continues to occur through P2P client software
20   that they created, distributed and promoted, and Defendants have caused, enabled,
21   facilitated, and materially contributed to that infringement.

22   69.   Defendants' knowledge of infringement is both actual and constructive.
23   Examples of this knowledge include written and oral statements by Defendants and
24   user comments posted on Download.com; express comparisons of P2P clients to
25   other notorious and illegally-operated P2P systems; and features of P2P clients
26   Defendants discussed with the software publishers that demonstrated the client was
27   optimized for finding and distributing popular sound recordings.  All of these facts
28   directly and circumstantially exhibit Defendants' awareness that the overarching

purpose and use of P2P clients they distributed and continue to distribute is to infringe Plaintiffs' copyrighted works.

70.   Defendants have caused, enabled, facilitated and materially contributed to the infringement complained of herein.   Defendants have, in addition to the actions detailed above, provided the tools and instruction for infringement via P2P clients they distribute; directly and indirectly promoted the infringement via P2P clients they distribute; directly profited from their distribution of P2P clients; and refused to exercise their ability to stop the infringement made possible by their distribution.

71.   Defendants' infringement is and has been willful, intentional, purposeful, and in disregard of the rights of Plaintiffs, and has caused substantial damage to Plaintiffs.

72.   As a direct and proximate result of Defendants' infringement, Plaintiffs are entitled to damages and their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.  Defendants' conduct has caused, and unless enjoined by the Court, will continue to cause Plaintiffs great and irreparable injury that cannot be fully compensated or measured in money.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiffs therefore also are entitled to injunctive relief to prohibit further infringement of Plaintiffs' copyrights.

## COUNT 3

## VICARIOUS COPYRIGHT INFRINGEMENT

73.   Plaintiffs incorporate as if set forth herein the allegations made in Paragraphs 1 through 72.

74.   Individuals using P2P client software that Defendants distributed, including LimeWire and others, have directly infringed and are directly infringing Plaintiffs' copyrights by, for example, creating unauthorized reproductions of Plaintiffs' works and distributing copies of such works to the public in violation of Plaintiffs' exclusive rights under the Copyright Act, 17 U.S.C. §§ 106, 501.

75.   Defendants are liable as vicarious infringers for the copyright infringement committed via P2P client software that Defendants created, distributed and promoted, including LimeWire and others.  At all times relevant to this action, Defendants (i) have had the right and ability to control and/or supervise the infringing conduct of P2P client users, including without limitation through their ability to cut off distribution of P2P clients and listing on Download.com any and all versions of the software; and (ii) have had a direct financial interest in, and derived substantial financial benefit from, the infringement of Plaintiffs' copyrighted works via P2P clients that Defendants distributed.

76.   Defendants have derived direct and substantial benefit from infringement in several ways, including without limitation (i) fees paid to Defendants by P2P client publishers through the PPD program and general Upload.com account registrations, (ii) advertisements P2P clients bought to run on Download.com for their software, (iii) advertisements other software publishers bought to run on P2P client download pages due to the popularity of the P2P clients, (iv) cross-promotion on P2P client download pages for other sites in the CBS Defendants' stable of websites.

77.   Defendants' infringement is and has been willful, intentional, purposeful, and in disregard of the rights of Plaintiffs, and has caused substantial damage to Plaintiffs.

78.   As a direct and proximate result of Defendants' infringement, Plaintiffs are entitled to damages and their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.  Defendants' conduct has caused, and unless enjoined by the Court, will continue to cause Plaintiffs great and irreparable injury that cannot be fully compensated or measured in money.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiffs therefore also are entitled to injunctive relief to prohibit further infringement of Plaintiffs' copyrights.

COMPLAINT

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for the following relief:

a.    For damages, including without limitation, actual and statutory damages, for Defendants' infringements of Plaintiffs' copyrights;

b.    For injunctive relief requiring that Defendants and Defendants' agents, servants, employees, officers, attorneys, successors, licensees, partners, and assigns, and all persons acting in concert or participation with each or any of them, cease infringing, whether directly or indirectly, and cease causing, enabling, facilitating, encouraging, promoting, inducing, contributing to, and participating in the infringement of, any of Plaintiffs' respective copyrights;

c.    For pre-judgment and post-judgment interest;

d.    For Plaintiffs' costs and disbursements in this action, including reasonable attorneys' fees; and

e.    For such other and further relief as the Court deems proper and just.

May 3, 2011                                    Respectfully submitted,


By _____
    Michael T. Zeller
    Adam B. Wolfson
    QUINN EMANUEL URQUHART &
        SULLIVAN, LLP
    865 S. Figueroa
    Los Angeles, California 90017
    (213) 443-3000
    (213) 443-3100 (facsimile)

    Attorneys for Plaintiffs

-19-

COMPLAINT

1

## DEMAND FOR JURY TRIAL

2

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by

3

jury.

4

May 3, 2011                             Respectfully submitted,

5

6

7

By Michael Zeller

8

Michael T. Zeller
Adam B. Wolfson

9

QUINN EMANUEL URQUHART &

10

SULLIVAN, LLP

11

865 S. Figueroa
Los Angeles, California 90017

12

(213) 443-3000

13

(213) 443-3100 (facsimile)

14

Attorneys for Plaintiffs

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-20-

Name & Address:
QUINN EMANUEL URQUHART & SULLIVAN,
LLP
Michael T. Zeller (Bar No. 196417)
865 S. Figueroa, Los Angeles, CA 90017

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| ALKI DAVID<br><br>v.　　　　PLAINTIFF(S) | CASE NUMBER<br><br>**CV11 03807 DSF (JCx)** |
|---|---|
| CBS INTERACTIVE INC<br><br>SEE ATTACHED　　DEFENDANT(S). | **SUMMONS** |

TO:　DEFENDANT(S): CBS Interactive Inc., CNET Networks, Inc., Lime Wire LLC, and
Lime Group LLC

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you
must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint
☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer
or motion must be served on the plaintiff's attorney, _Michael T. Zeller_____, whose address is
_865 S. Figueroa, Los Angeles, California 90017_____.  If you fail to do so,
judgment by default will be entered against you for the relief demanded in the complaint.  You also must file
your answer or motion with the court.

Clerk, U.S. District Court

Dated: ___MAY - 3 2011___

By: _____

CHRISTOPHER POWERS

Deputy Clerk

(Seal of the Court)

1181

_[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed
60 days by Rule 12(a)(3)]._

1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Michael T. Zeller (Bar No. 196417)
2    michaelzeller@quinnemanuel.com
   Adam B. Wolfson (Bar No. 262125)
3    adamwolfson@quinnemanuel.com
  865 South Figueroa Street, 10th Floor
4  Los Angeles, California  90017-2543
  Telephone:  (213) 443-3000
5  Facsimile:  (213) 443-3100

6  Attorneys for Plaintiffs

7

8                  UNITED STATES DISTRICT COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  ALKI DAVID, DETRON BENDROSS, JEROME WOODS (P/K/A ROME), TRISCO SMITH-PEARSON, JEFFREY THOMPKINS (P/K/A JT MONEY), JONATHAN SHINHOSTER (P/K/A J-SHIN), SPECTACULAR SMITH, DIAMOND SMITH (P/K/A BABY BLUE), COREY MATHIS (P/K/A SLICK 'EM), EMMANUEL RAMONE DeANDA, ERIC JACKSON (P/K/A KAINE), DE'ANGELO HOLMES (P/K/A D-ROC), ANTHONY ROUND (P/K/A N.A.R.D.), DENNIS ROUND, and COREY JOHNSON (P/K/A COLDHARD), | CASE NO. <br><br> COMPLAINT FOR: <br><br> (1) INDUCEMENT OF COPYRIGHT INFRINGEMENT; <br><br> (2) CONTRIBUTORY COPYRIGHT INFRINGEMENT; and <br><br> (3) VICARIOUS COPYRIGHT INFRINGEMENT <br><br> JURY TRIAL DEMANDED |

          Plaintiffs,

     vs.

CBS INTERACTIVE INC., CNET NETWORKS, INC., LIME WIRE LLC, and LIME GROUP LLC,

     Defendants.

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
See attached caption

**DEFENDANTS**

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa, Los Angeles, California 90017
(213) 443-3000

**Attorneys (If Known)**

---

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

---

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify):    ☐ 6 Multi-District Litigation    ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:    JURY DEMAND:** ☒ Yes    ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes    ☒ No    ☐ **MONEY DEMANDED IN COMPLAINT: $**

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
17 U.S.C. §§ 101 et seq., 501 et seq.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☒ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **REAL PROPERTY** | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 210 Land Condemnation | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | **IMMIGRATION** | | **FEDERAL TAX SUITS** |
| | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 462 Naturalization Application | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | ☐ 290 All Other Real Property | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | ☐ 465 Other Immigration Actions | | |

**CV11    03807**

**FOR OFFICE USE ONLY:**    Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☒ No ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or
                ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
                ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
                ☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☒   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | Florida, Georgia, Illinois, New York |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☒   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | San Francisco County, Delaware, New York |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
     Note: **In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | San Francisco County, Delaware, Florida, Georgia, Illinois, New York |

\* **Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____    Date __5/3/11__

     Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |